UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

BRILLIANT SEMENOVA :
9231 Harvest Rush Road :
Owings Mills, Maryland 21117 :
 :
     Plaintiff :
 :
     vs. : Case No. 14-cv-3413
 :
MARYLAND TRANSIT :
ADMINISTRATION :
6 St. Paul Street :
Baltimore, Maryland 21202 :
 :
     Defendant :

COMPLAINT

Action Under Title II of the Americans with Disabilities Act and Amendments

1.    This is an action for actual, compensatory and punitive damages, and for declaratory and injunctive relief, brought under Title II of the Americans with Disabilities Act of 1991 as Amended (2008) 42. U.S.C. §12131 et. seq. (collectively the "ADA").

Jurisdiction and Venue

2.    The Court has subject matter jurisdiction of this case generally, under 28 U.S.C. §1331, as a matter arising under federal law, and specifically, under 42. U.S.C. §12133, as a case arising under the ADA.

3.    Venue is proper in the District of Maryland, as the material events and omissions giving rise to the claim are alleged to have occurred in or near Baltimore City and/or Baltimore County, Maryland.

1

Parties

4.     Plaintiff, Brilliant Semenova ("Brilliant") is a qualified individual with a disability, in that she has cerebral palsy, and uses a walker and/or crutches for mobility.

5.     Defendant Maryland Transit Administration ("MTA") is an agency of the state of Maryland, with a place of business at 6 St. Paul Street, Baltimore, Maryland 21202, that provides "designated public transportation" in and throughout the state of Maryland, including Baltimore City and Baltimore County, in that it owns and operates a "commuter bus service" along a "fixed route system" on "buses" (as those terms are defined in 49 C.F.R. § 37.3).   MTA's services are made available to the general public.

6.     At all times relevant to the proceeding, MTA was a covered entity under the 42 U.S.C. § 12131 et seq. in that it is a government entity providing services to the general public in the state of Maryland.

Enforcement

7.     Pursuant to 42 U.S.C. §12133 of the Americans with Disabilities Act and Amendments thereto, an aggrieved person may commence a civil action seeking, and the Court may award and grant, actual, compensatory, and punitive damages, as well as declaratory and injunctive relief, based upon a past or impending discriminatory practice as defined in 42 U.S.C. §12132.

8.     Pursuant to 42 U.S.C. §12134, the Attorney General was authorized to promulgate regulations to implement the purpose and intention of Title II of the ADA.

9.     Pursuant to the regulations promulgated thereunder, specifically, 49 C.F.R. 37.5, an entity providing designated public transportation, including commuter bus service, shall not,

on the basis of disability, deny to any individual with a disability the opportunity to use the entity's transportation service for the general public, if the individual is capable of using that service.

### Denial of Use of MTA's Transportation Service

10. At all times relevant to the events set forth in the complaint, Brilliant was a student at the Catonsville Campus of the Community College of Baltimore County ("CCBC"). She utilized MTA's buses to go to and from her classes.

11. At all times relevant to the events set forth in the complaint, the bus drivers were employees of MTA, working within the scope of their employment.

12. On numerous occasions, beginning in or about October, 2011 (for purposes of this action) and continuing through 2012, MTA denied Brilliant the opportunity to use its commuter bus service, when its bus operators refused to lower the lift that would enable her to gain entry into the bus independently, and/or otherwise refused to assist her in getting on the bus, oftentimes leaving her stranded, even though she was otherwise capable of using the bus service.

13. On the evening of November 11, 2011, a public safety officer for CCBC, personally observed Brilliant attempting to use the bus (Old Court #77), but the bus driver refused to lower the lift for Brilliant, even though Brilliant explained to the bus driver that she needed the lift lowered so that she could get on the bus. It was only with the assistance of the public safety officer and other passengers that Brilliant was able to board the bus.

14. Despite the issuance of a specific bulletin to its bus operators by MTA at the end of November, 2011, in which its employees were instructed to lower the lift for people who use walkers upon request, the discrimination continued, as multiple bus drivers would not lower the

lift after Brilliant asked that they do so, with some going so far as to accuse her of feigning her disability and telling her to get on the bus without the use of the lift. When she insisted that she could not board without use of the lift, the operator of the bus would either drive away, or, on rare occasions, wait as other bus passengers or her mother would assist her on the bus.

15. These, and other incidents, occurred with such frequency during her enrollment at CCBC that she ultimately was forced to withdraw from school in the summer of 2012, as she was unable to complete her course requirements and maintain her financial aid.

16. Brilliant filed a complaint with the Maryland Commission on Human Rights, but, after a hearing in October, 2013, the matter was not resolved.

## Damages

17. As a consequence of defendant's discriminatory conduct, as set forth herein, Brilliant has suffered humiliation, severe inconvenience, injury and harm.

18. On many occasions, too numerous to catalogue here, in a variety of weather conditions, Brilliant has waited for the bus to arrive, and was refused entry onto the bus because the bus driver refused to lower the lift, or had to suffer the humiliation of being accused of faking her disability and/or being carried or otherwise assisted onto the bus by her mother or other passengers so that she could board.

19. As a further consequence of MTA's discrimination, Brilliant, with no reliable means of transportation to get to class, lost her financial aid eligibility, and was forced to withdraw from CCBC.

WHEREFORE, plaintiff respectfully requests that the Court enter judgment against defendant, as follows:

    A.    Declare the defendant's practices and actions, as alleged herein, were and are discriminatory and violative of Title II of the Americans with Disabilities Act, particularly those sections of the Act that deal with public transportation agencies;

    B.    Enjoin defendant and its employees, agents, successors, assigns and all other person in active concert or participation with it, permanently, from refusing to make reasonable accommodations in its rules, policies, practices and services, where such accommodations may be necessary to afford plaintiff equal opportunity to use and enjoy the services provided by defendant;

    C.    Award actual and compensatory damages to plaintiff, in such amount as would fully compensate her for the injuries and damages she incurred as a result of defendant's discriminatory practice, policies and conduct;

    D.    Award punitive damages against defendant, as appropriate;

    E.    Allow plaintiff her attorneys' fees and costs incurred in this matter; and

    F.    Grant such other and further relief as the Court deems proper.

Respectfully submitted:

/s/Joel R. Zuckerman
Joel R. Zuckerman
Federal Bar No. 12730
Maxwell Barke & Zuckerman LLC
51 Monroe Place, Suite 806
Rockville, Maryland 20850
Telephone:  (301)309-8300
Facsimile:  (301)309-8303
zuckerman@maxlaw.us